W. J. BIRDSALL, Appellant, v. MEURAL GOEHRING et al., Appellees.

**QUIETING TITLE: Burden of Proof—Presumption Following Legal Title—Acquiescence.** In a controversy over the ownership of a burial lot, record reviewed and, the burden of proof being on plaintiff, *held,* defendant must prevail, in view (a) of the evidence, (b) of the presumption which follows the legal title and (c) of plaintiff's long acquiescence in defendants' title.

*Appeal from Hamilton District Court.*—CHARLES E. ALBROOK, Judge.

FRIDAY, DECEMBER 17, 1915.

The opinion sufficiently states the case.—*Affirmed.*

*Wesley Martin,* for appellant.

*A. N. Boeye* and *O. J. Henderson,* for appellees.

WEAVER, J.—Plaintiff is the surviving father of Jesse Birdsall, deceased, who was the husband of the defendant, Meural Goehring. The petition alleges that plaintiff purchased the burial lot on which is the grave of the deceased son and husband, and made an advance payment upon the purchase price, and that, after the burial of deceased upon the lot, the defendant, without plaintiff's consent, went to the grantor of the lot, paid the remainder of the purchase price and took a deed of conveyance to herself, and now claims the ownership of the property adverse to him. He offers to return

<div style="margin-left:2em">QUIETING TITLE: burden of proof: presumption following legal title: acquiescence.</div>

to defendant the amount of money she has paid upon the lot, and prays that he be adjudged the rightful owner, and that the title thereto be quieted in him.  Defendant admits that she took and holds the conveyance of the lot to herself, alleges that she is the rightful owner thereof in fee simple, and asks that the title be quieted in her against the claims of plaintiff.  The court found the equities to be with the defendant, Meural Goehring, and quieted the title in her.

The evidence, so far as pertinent, is brief.  The city clerk, through whom the lot was purchased, issued a receipt for the first payment of $15 to W. J. Birdsall; but the clerk's record, concerning the conveyance three months later, shows the name of Meural Goehring as purchaser or grantee, and credits her with the final payment of $15.  Plaintiff, as a witness, says that his son died in Minnesota, and the body, accompanied by the widow and a brother of deceased, was brought to his home.  At that time, plaintiff says that he handed $15 to his son, C. C. Birdsall, and directed him to purchase a cemetery lot on his account, and thereafter the son brought him a receipt for its payment to the city clerk. Later, when plaintiff went to the clerk to make the deferred payment, he ascertained that the widow had settled it and taken the deed.  C. C. Birdsall says that he met the widow with the body of the deceased at St. Paul, and returned with her to his father's home.  On the following day, his father asked him to go to the city clerk and purchase a cemetery lot, and at the same conversation, handed him $15 for that purpose, and that, in pursuance of such authority, he did make the purchase.  The witness admits that, shortly after his brother's death, the widow paid him $60, for which he gave her a receipt "in full to date", but denies that such payment included the return to him of the money that he had paid for the burial lot.  He testifies that deceased owed him an amount, not definitely stated, for several items of borrowed money, of which no book account had been kept.  He says:

"There was no settlement except that Mrs. Goehring

gave me the $60, and I said 'All right; I will call that in full to date.' · She couldn't make a settlement for my · brother; she didn't know how much he owed me. I took the $60. I thought it was all in the family. I didn't care for the expense for my brother. The $60 wasn't to cover any particular item. It was just a general payment. She didn't call my attention to the particular items at the time I gave her the receipt.''

This witness says that he does not think the widow was present when his father gave him the money and directed him to buy the lot, and, so far as any direct testimony goes, she did not know of the fact, but supposed that the · money had been paid by C. C. Birdsall. Plaintiff does swear, however, and is corroborated by another member or two of the family, that, on the day after the funeral, she asked plaintiff how much he paid for the lot, and expressed a wish to ''have some interest'' in it. In her own behalf, the defendant swears that, on the way from St. Paul, her brother-in-law suggested that his father would be likely to want the burial to be made at Cass Center, where the family had formerly resided, but she objected to it and said she wished the grave to be in Webster City. The plaintiff, according to her story, mentioned his desire that deceased be buried at Cass Center, but again she stated her preference for the Webster City cemetery. On the next day, as she says, C. C. Birdsall suggested that they go down town and arrange for a burial lot. She went with him, and, on arriving there, and having mentioned her desire to purchase some needed clothing, he proposed· to go and see about the lot while she was making her purchases, and did so. She says:

''Nothing was said about who should pay for the lot. Nothing was said whom the lot was bought for. It was my impression, when I told him to see about the lot, it was for myself.''

According to her statement, she never knew that plaintiff paid or advanced any money for the purchase of the lot until· that claim was made at the trial. She believed and

assumed that C. C. Birdsall made the payment, and promised to repay him as soon as the insurance upon the life of deceased was paid, and swears that she did in fact so pay it, the payment being included in the sum of $60, which he admits having received from her. It is shown without dispute that no other member of plaintiff's family is buried upon this lot, and that, during the six or more years after the burial of the deceased, and before the trial of this case, the defendant, Mrs. Goehring, had paid the annual dues to the sexton for the care of the property, and had expended some money for grading it up. In rebuttal, C. C. Birdsall denies that defendant ever repaid him for the money expended on the purchase of the lot, or that the receipt he gave her was intended to cover that item. Plaintiff also denies that he ever expressed any desire that his son should be buried at Cass Center, but says that it was at all times his intention to bury him at Webster City.

It will be seen that this issue is purely one of fact, upon which plaintiff has the burden of proof; and we agree with the trial court that this burden has not been so fully satisfied as to justify us in setting aside the legal title, which is admittedly in the defendant, Mrs. Goehring. Practically speaking, the dispute finally centers in the conflicting statements of Mrs. Goehring and C. C. Birdsall, and if we may concede to these witnesses an equal degree of credibility (and more than that appellant cannot fairly claim), the presumption which follows the title and possession in the hands of the surviving wife, strengthened as it is by six years' silent acquiescence on the part of plaintiff, still compels the result reached in the decree from which the appeal is taken.

Into the reasons for the personal hostility which seems to have arisen between the family of the deceased and the woman who was his wife, we have neither the right nor desire to inquire; but, without its existence, a regrettable controversy, such as is here presented, could not arise. Nothing appears in the record to impeach the honesty or candor of

either party, but it is inevitable that, under such circumstances, testimony will, to some degree, be warped and colored by intensity of personal feeling. Having made due allowance for this human weakness on both sides, and considering all the facts developed in the light of the conduct of the parties before the dissension arose, we cannot avoid the conclusion that the preponderance of the evidence is with the appellees, rather than with the appellant. Nothing will be gained by taking time to review the circumstances in detail or to enter into any argument as to the weight and value of the testimony of individual witnesses. We are satisfied of the correctness of the decree below, and it is therefore— *Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.